UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:

ALINA ALVAREZ LUJARDO

Debtor./

CASE NO.: 15-13429-AJC

Chapter 7

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING (1) SALE
OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES BY PRIVATE SALE AND (2)
DISBURSEMENTS AT CLOSING ON SALE**

Ross R. Hartog, as Chapter 7 trustee (the "Trustee") for the estate of Alina Alvarez Lujardo (the "Debtor"), through undersigned counsel, moves (the "Motion") for entry of an order approving (a) the sale of real property free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. §§ 363(b) and (f) and Rule 6004, Fed.R.Bank.P., by private sale; and (b) disbursement of the sale proceeds in the manner requested herein. In support of the Motion, the Trustee states as follows:

## INTRODUCTION

1.      The Motion seeks approval of a short sale of certain real property free and clear of liens, claims, and encumbrances, and to authorize to pay closing costs as estimated on the HUD-1 closing statement attached hereto as **Exhibit "1."**[1]

2.      In connection with the sale, the Trustee also moves to determine that there are no liens, claims, or encumbrances against the real property that are not otherwise identified herein, that the amounts due the lien holders (and the carve-out for the bankruptcy estate) exceed the fair

---

[1] Exhibit "A" is a preliminary HUD-1 and will be amended and updated through closing.  It is being provided here to reflect the Trustee's best estimate of the closing costs.

market value of the real property, and thus that any lien holder that is not being paid from the proceeds of the sale shall be deemed a wholly unsecured creditor whose lien has zero economic value.

3.      Because the proposed sale is a short sale, to the extent the Motion is granted, it remains subject to the approval of the first position lien holder.  The Motion is being filed contemporaneously with the short sale approval process so as to avoid delay if and when the short sale is approved.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O).

5.      Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1409.

6.      The statutory bases for the relief sought herein are sections 105(a) and 363 of Bankruptcy Code and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION AND BACKGROUND

7.      On February 25, 2015, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code [ECF No. 1].

8.      Ross R. Hartog was appointed as the Chapter 7 Trustee.

9.      As of the Petition Date, the Debtor had an interest in real property located at 8777 Collins Ave., #603, Surfside, FL 33154 (the "Real Property") with the following legal description:

> Condomininm Unit No. 603, Champlain Towers South Condominium, according to the Declaration of Condomlninm thereof, as recorded in Official Records Book 11191, Page 35, of the Public Records

10.     The Debtor did not claim the Real Property as exempt on Schedule "C".

11.     On May 21, 2015, the Trustee filed *Trustee's (A) Motion to Approve Exclusive Right of Sale Listing Agreement; and (B) Application to Employ Real Estate Broker* [ECF No. 38], to employ Jose Carlos Blanco and Blanco Realty Services (the "Broker") as a broker to market and sell the Real Property, which was subsequently granted by the Court.

12.     The Trustee and his Broker marketed the Real Property for sale and found a willing buyer.

## POSSIBLE OR KNOWN LIENS, CLAIMS AND ENCUMBRANCES

13.     Based upon a search of public records, upon information and belief and Debtor's Schedules, the Real Property may be encumbered by the following liens, claims and encumbrances:

    a.  Wells Fargo Home Mortgage – First Mortgage

    b.  Citibank, N.A. – Second Mortgage

    c.  Champlain Towers South Condominium Association, Inc. – HOA lien

    d.  Discovery Bank – Final Judgment against Debtor

14.     There are no known real estate tax liens and it appears that all outstanding taxes have been paid.

15.     A copy of a title commitment is attached as **Exhibit "2"** (the "Title Commitment"). The Trustee respectfully requests this Court find that no other liens, claims, or encumbrances exist on the Real Property other than that of the foregoing lienholders as illustrated on the Title Commitment.

## THE OFFER

16.     The Trustee has received an offer to purchase the Real Property pursuant to that certain *"As Is" Residential Contract for Sale and Purchase* and *"Addendum to 'As-Is Residential Contract for Sale and Purchase"* (collectively, the "Contract"). A copy of the Contract is attached as **Exhibit "3"**.

17.     The principal terms of the Contract are summarized as follows:

a.   **Buyer**:  David Ustaev and Boris Ustaev (the "Buyer");

b.   **Purchase Price**:  $485,050.00 cash (the "Purchase Price");

c.   **Terms**: As-is, where-is, with no representation or warranties of any type given by the Trustee, but free and clear of all liens, claims and encumbrances;

d.   **Closing Date**: on or before forty-five (45) days from short sale effective date (written notice to buyer that all appropriate parties have approved the short sale);

e.   **Payment to Estate:** 6% of the Purchase Price.

## REQUESTED RELIEF

### *Sale of Property*

18.     The Trustee respectfully requests, among other things, approval of the sale (the "Sale") of the estate's right, title, and interest in the Real Property to the Buyer pursuant to the Contract free and clear of all liens, claims, and encumbrances, with any liens, claims and encumbrances to attach to the sale proceeds pursuant to 11 U.S.C. §§ 363(b), (f), (k) and (m).

19.     The Trustee believes that the proposed sale to the Buyer will maximize the value and benefit to creditors of this estate.

20.     The Sale shall be on an "as is, where is" basis without representations of any kind from the Trustee or his professionals including undersigned counsel and the Broker, except as may be contained in the Contract.

21.     The Sale shall also be free and clear of all liens, claims, and encumbrances, with any such liens, claims, and encumbrances to attach to the proceeds of the Sale.

### *Sale of Assets Outside Ordinary Course of Business*

22.     Section 363(b) provides, in relevant part, that a trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

23.     While the Trustee suggests that retaining a broker to market real estate is in the ordinary course of business, a short sale that contemplates a carve-out for a bankruptcy estate could be considered outside the ordinary course of business.

24.     And such sales are generally approved when the Trustee demonstrates that the sale constitutes an exercise of sound "business judgment". *See Generally* 3 COLLIER ON BANKRUPTCY ¶ 363.02[1][f] (16th ed. 2011). *See also In re Diplomat Const., Inc.*, 2012 WL 5205792 (Bankr.N.D.Ga. September 18, 2012) ("[t]he business judgment test is the prevailing rubric to evaluate the proposed transaction under § 363(b)(1)"); *In re Condere Corp.,* 228 B.R. 615 (Bankr.S.D.Miss. 1998) (business judgment); *WBQ P'ship v. Virginia*, 189 B.R. 97 (Bankr.E.D.Va. 1995) (best interest of the estate); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169 (D.Del. 1991); (fair and reasonable price); *In re Phoenix Steel*, 82 B.R. 334 (Bankr.D.Del. 1987) (fair and equitable transaction).

25.     The "sound business judgment" test requires a trustee to establish: (a) that a sound business reason justifies the sale outside the ordinary course of business, (b) that accurate and reasonable notice has been provided to interested parties, (c) that the trustee has obtained a fair and reasonable price, and (d) good faith. *Id.; In re Phoenix Steel Corporation*, 82 B.R. 334, 335 (Bankr.D.Del. 1987); *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983).

### *Sound Business Reasons Exist to Sell the Property*

26.    There are sound business reasons justifying the Sale.

27.    First, Sale appears to be the best manner in which to maximize value for the estate with respect to the Real Property because it takes an asset of little or no value and by way of a short sale, generates money for the estate.  Here that figure will be 6% of the Purchase Price.

28.    Second, the manner in which the Trustee proposes to sell the Real Property, that is marketing the property with a professional real estate broker, is designed to maximize value for the Property and only results in costs to the estate if the Sale closes.  The Trustee believe that occurred here considering multiple offers were made and the Contract appears to be the highest and best offer presented for consideration.

29.    And third, the Trustee, through the Broker, identified a potential buyer and a contract that the Broker believes is likely to be approved as a short sale.

30.    The Trustee respectfully submits that all of the factors demonstrating his sound business judgment are met, and that the Sale should be approved.

### *Fair and Reasonable Price*

31.    The Trustee believes that the purchase price is reasonable as it above the estimated market value.

32.    The Trustee estimates the value to be achieved to the estate will be approximately $29,000.00.

### *The Sale is in Good Faith*

33.    The Trustee proposes to sell the Real Property to the Buyer, who is a third-party that is not an insider of the Debtor.

34.    In light of the foregoing, the Sale is being proposed in good faith. *See In re After Six, Inc.*, 154 B.R. 876, 883 (Bankr.E.D.Pa. 1993); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986).

### *Sale Free and Clear of All Liens, Claims and Encumbrances*

35.    The Trustee proposes to sell the Real Property free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code with all such liens, claims, and encumbrances attaching to the sale proceeds.

36.    Here, based on the preliminary title search, the only liens, claims, or encumbrances against the Real Property are the First Mortgage, Second Mortgage, and HOA Lien.

37.    In connection with the Sale, the Trustee requests that the Court find that (a) no lien, claim, or encumbrance other than that of First Mortgage, Second Mortgage, and HOA Lien, (b) the First Mortgage is undersecured and thus any liens, claims, and encumbrances held by other parties (namely the Second Mortgage and the HOA Lien) are inferior to the First Mortgage and are therefore wholly unsecured (collectively, the "Junior Lienholders"), (c) the Real Property may be sold free and clear of the Junior Liens, if any, and that the sole remedy, if any, of the Junior Lienholders, if any, are general unsecured claims in the bankruptcy estate.

38.    Sales under Section 363(f) are permitted if and when one of the following conditions is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such a lien, claim, or encumbrance; (2) the entity holding such lien, claim, or encumbrance consents to such a sale; (3) the lien, claim, or encumbrance is less than the aggregate value of all such interests; (4) such interest is in a bona fide dispute; or (5) the entity is compelled in a legal or equitable proceeding to accept a money satisfaction of such interest. *See Generally* 3 COLLIER

ON BANKRUPTCY ¶ 363.06 (16th ed. 2011). The language of Section 363(f) is disjunctive so that a sale free and clear of liens, claims, and encumbrances may be approved if any one of the aforementioned conditions is met. *Id. See also In re Heine*, 141 B.R. 185, 189 (Bankr. D. S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

39.    The Trustee submits that the Sale satisfies Section 363(f)(3) and (5).  All liens will attach to the sale proceeds and the secured creditors could be compelled to accept a money satisfaction of their interests. "There is no requirement that the legal or equitable proceeding compelling the acceptance of less than full value actually occur prior to the § 363(f)(5) sale, or if at all.  Furthermore, if the 'legal or equitable proceeding' contemplated by § 363(f)(5) would result in the junior lien holder receiving nothing, then a § 363(f)(5) sale that pays them nothing or gives them an unsecured claim to be redeemed for some dollar amount would appear to be permissible." *In re Levitt & Sons, LLC,* 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008).

40.    Here, the balance due on the First Mortgage exceeds the value of the Real Property.

41.    Thus, the Junior Lienholders would receive nothing on their claim if the Real Property were to be sold at a foreclosure sale. Based on the foregoing, the Trustee wishes to proceed with the Sale having satisfied the requirement of Section 363(f).

42.    The Trustee further submits, to the extent that no objections to the Sale are made, that the Sale also satisfies Section 363(f)(2).  Specifically, when an interested party is served with notice of a proposed sale, and that party does not timely object to the proposed sale, that party is deemed to have consented to the sale. *Futuresource LLC v. Reuters Limited*, 312 F.3d 281, 285 (7th Cir. 2002). *See In re Harbour East Development, Ltd.*, WL 1851015, *12 (Bankr.

S.D.Fla. 2012) (Not Reported in B.R.); *BAC Home Loans Servicing LP v. Grassi*, WL 6096509, *5 (1st BAP 2011) (Not Reported in B.R.). .

### <u>The Buyer is a Good Faith Purchaser Under § 363(m) of the Bankruptcy Code</u>

43.     Section 363(m) of the Bankruptcy Code provides that the reversal or modification on appeal of a transaction authorized under Section 363(b) of the Bankruptcy Code does not affect the validity of the sale to an entity that acquired the property in good faith. *See, e.g., In re Stadium Management Corp.*, 895 F.2d 845 (1st Cir. 1990); *In re Adamson Co., Inc.* 159 F.3d 896 (4th Cir. 1998).

44.     Here the buyer is an unrelated third-party who proposes to purchase the Real Property as an arm's-length transaction.  Indeed, the Buyer only learned of the Real Property through the marketing efforts of the Broker.

45.     Tor the reasons set forth above, the Buyer is a good faith purchaser for value that is entitled to the protections afforded under Section 363(m).

### TRUSTEE SHOULD BE AUTHORIZED<br>TO EXECUTE SALE DOCUMENTS AND PAY CLOSING COSTS

46.     The Trustee shall cooperate with the Buyer to complete the various documents necessary to consummate the Sale, including a HUD-1 and trustee's deed.

47.     The Trustee requests that he be authorized to execute those documents necessary to consummate the Sale and evidence the conveyance of the Real Property to the Successful Bidder.

48.     The Trustee further requests authority to and pay at closing all expenses reasonable, necessary, and ordinary to close on the Sale, including, but not limited to documentary stamp taxes, recording fees, attorney's fees and costs appearing on the HUD-1 closing statement attached as **Exhibit "1"**.

## NOTICE

49.     The Trustee has served the entire creditor matrix, the Buyer, the Broker, and any party asserting, or believed to possess, a lien on the Real Property.

## REQUEST TO WAIVE THE 14-DAY STAY

50.     Bankruptcy Rule 6004(h), provides that "[a]n order of the court authorizing the use, sale or lease of property...is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*." Fed. R. Bankr. P. 6004(h) (emphasis added).

51.     The Trustee requests that the stay period be waived to facilitate the short sale process.  Once a short is approved, little time is typically offered to close such sale.

52.     Although the Trustee believes the short sale process will not be completed until after this Motion is heard and any 14 day stay period runs on any order approving the Motion, the Trustee does not wish to risk jeopardizing any short sale approval and believes that any benefit offered by the stay to interested parties is outweighed by the risk of losing a short sale.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests entry of an order: (1) granting this Motion; (2) authorizing the Sale of the Real Property to Buyer free and clear of liens, claims, and encumbrances, pursuant to sections 11 U.S.C. §§ 363(b) and (f) subject to the approval of the lender; (3) determining who holds valid liens against the Real Property and whether or not those

liens are secured, (4) authorizing the Trustee to execute closing documents; (5) authorizing the

Trustee to pay closing costs as set forth in **Exhibit "1"**; (6) waiving the 14-day stay imposed by

Rule 6004(h); and (7) granting such other and further relief as is just and proper.


DATED:  October 21, 2015                 **MARKOWITZ RINGEL TRUSTY& HARTOG, P.A.**
                                         *Counsel for the Chapter 7 Trustee*
                                         9130 South Dadeland Boulevard, Suite 1800
                                         Miami, Florida 33156
                                         Tel:  (305) 670-5000 // Fax:  (305) 670-5011

                                         By: */s/ John H. Lee*
                                             John H. Lee, Esq.
                                             Florida Bar No. 91795
                                             jlee@mrthlaw.com


604092

# EXHIBIT 1
Preliminary HUD

| A. **Settlement Statement** | U.S. Department of Housing and Urban Development | |
|---|---|---|
| | OMB Approval No. 2502-0265 | |

**B. Type of Loan**

| 1.☐ FHA  2.☐ FmHA 3.☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4.☐ VA    5.☐ Conv. Ins. | LUJARDO | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.
Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | |
|---|---|
| **D. NAME OF BORROWER:** | DAVID USTAEV and BORIS USTAEV |
| ADDRESS OF BORROWER: | |
| **E. NAME OF SELLER:** | ROSS HARTOG, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF ALINA ALVAREZ LUJARDO |
| ADDRESS OF SELLER: | 9130 SO. DADELAND BLVD., #1800, MIAMI, FL 33156 |
| **F. NAME OF LENDER:** | |
| ADDRESS OF LENDER: | |
| **G. PROPERTY LOCATION:** | 8777 COLLINS AVENUE, #603 MIAMI BEACH, FL 33154 |
| **H. SETTLEMENT AGENT:** | MARKOWITZ, RINGEL, TRUSTY & HARTOG, P.A ATTORNEYS AT LAW |
| PLACE OF SETTLEMENT: | TWO DATRAN CENTER, SUITE 1800, 9130 S. DADELAND BLVD., MIAMI, FL 33156- |
| **I. SETTLEMENT DATE:** | 11/30/2015 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 485,050.00 | 401. Contract sales price | 485,050.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 322.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes         to | | 406. City/town taxes         to | |
| 107. County taxes  11/30/2015 to  1/1/2016 | 411.05 | 407. County taxes  11/30/2015 to  1/1/2016 | 411.05 |
| 108. Assessments         to | | 408. Assessments         to | |
| 109.         to | | 409.         to | |
| 110.         to | | 410.         to | |
| 111.         to | | 411.         to | |
| 112.         to | | 412.         to | |
| **120. GROSS AMOUNT DUE FROM BORROWER** ▶ | 485,783.05 | **420. GROSS AMOUNT DUE TO SELLER** ▶ | 485,461.05 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 20,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 41,589.80 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 414,768.25 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Principal amount of new loan(s) | | 506. | |
| 207. | | 507. BANKRUPTCY CARVE OUT FEE | 29,103.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| 209a | | 509a | |
| 209b | | 509b | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes         to | | 510. City/town taxes         to | |
| 211. County taxes         to | | 511. County taxes         to | |
| 212. Assessments         to | | 512. Assessments         to | |
| 213.         to | | 513.         to | |
| 214.         to | | 514.         to | |
| 215.         to | | 515.         to | |
| 216.         to | | 516.         to | |
| 217.         to | | 517.         to | |
| 218.         to | | 518.         to | |
| 219.         to | | 519.         to | |
| **220. TOTAL AMOUNTS PAID BY OR IN BEHALF OF BORROWER** ▶ | 20,000.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER** ▶ | 485,461.05 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 485,783.05 | 601. Gross amount due to seller (line 420) | 485,461.05 |
| 302. Less amounts paid by/for borrower (line 220) | 20,000.00 | 602. Less reductions in amount due seller (line 520) | 485,461.05 |
| **303. CASH ☒ From ☐ To  BORROWER** ▶ | 465,783.05 | **603. CASH  ☒ To ☐ From  SELLER** ▶ | 0.00 |

©2004 Display Systems, Inc. (863) 763-5555 - Laser Generated

HUD-1 (3-86) RESPA, HB 4305.2

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT                                                                 PAGE 2

| L.   Settlement Charges | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COM. based on price   485,050.00 @   6.00 % =   29,103.00 | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701.   14,551.50 | to HALPRIN REALTY | | | |
| 702.   14,551.50 | to BLANCO REALTY SERVICES | | | |
| 703. Commission paid at Settlement | | | | 29,103.00 |
| 704. ADMINISTRATION FEE | to HALPRIN REALTY | | 295.00 | |
| 800. Items Payable In Connection With Loan | | | | |
| 801. Loan Origination Fee | % | to | | |
| 802. Loan Discount | % | to | | |
| 803. Appraisal Fee | | to | | |
| 804. Credit Report | | to | | |
| 805. Lender's Inspection Fee | | to | | |
| 806. Mortgage Insurance Application Fee | | to | | |
| 807. | | to | | |
| 808. | | to | | |
| 809. | | to | | |
| 810. | | to | | |
| 811. | | to | | |
| 812. | | to | | |
| 813. | | to | | |
| 814. | | to | | |
| 815. | | to | | |
| 900. Items Required By Lender To Be Paid In Advance | | | | |
| 901. Interest from  11/30/2015  to  12/1/2015  @          /day | | | | |
| 902. Mortgage Insurance Premium for        months to | | | | |
| 903. Hazard Insurance Premium for      years   to | | | | |
| 904. | years to | | | |
| 905. | years to | | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard insurance | months@ | per month | | |
| 1002. Mortgage insurance | months@ | per month | | |
| 1003. City property taxes | months@ | per month | | |
| 1004. County property taxes | months@ | per month | | |
| 1005. Annual assessments | months@ | per month | | |
| 1006. | months@ | per month | | |
| 1007. | months@ | per month | | |
| 1008. | months@ | per month | | |
| 1009. | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee | to MARKOWITZ,RINGEL,TRUSTY&HARTOG | | | 650.00 |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | | | |
| 1105. Document preparation | to | | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to MARKOWITZ,RINGEL,TRUSTY&HARTOG | | | 1,000.00 |
| (includes above items numbers: | | | | |
| 1108. Title insurance | to MARKOWITZ,RINEL,TRUSTY&HARTOG | | | 2,500.50 |
| (includes above items numbers: | | | | |
| 1109. Lender's coverage: Risk Premium | INS AMT: | | | |
| 1110. Owner's coverage: Risk Premium  2,500.50 | INS AMT: 485,050.00 | | | |
| 1110a. | | | | |
| 1111. SURCHARGE | to OLD REPUBLIC | | | 3.28 |
| 1112. | to | | | |
| 1113. | to | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording Fees: Deed $27.00; L-Mortgage(s)   ; S-Mortgage(s)   ; Releases | | | 27.00 | |
| 1202. City/county tax/stamps: Deed   ; L-Mortgage(s)   ; S-Mortgage(s) | | | | |
| 1203. State tax/stamps: Deed $2,910.60; L-Mortgage(s)   ; S-Mortgage(s) | | | | 2,910.60 |
| 1204. | | | | |
| 1205. | | | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Survey | to | | | |
| 1302. Pest Inspection | to | | | |
| 1303. Roof Inspection | to | | | |
| 1304. 2015 TAXES | to MIAMI-DADE COUNTY TAX COLLECTOR | | | 4,737.42 |
| 1305. LIEN SEARCH | to TITLE SERVICES | | | 385.00 |
| 1306. CONDO ESTOPPEL | to CONDO MANAGEMENT CO. | | | 300.00 |
| 1307. | to | | | |
| 1308. | to | | | |
| 1309. | to | | | |
| 1400. Total Settlement Charges  (enter on lines 103, Section J and 502, SectionK)  ▶ | | | 322.00 | 41,589.80 |

CERTIFICATION                                                       DATE: 11/30/2015
I have carefully reviewed the HUD - 1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD - 1 Settlement Statement.
ROSS HARTOG, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF ALINA ALVAREZ LUJARDO

_____ Borrower    By: _____ Seller
DAVID USTAEV                                          ROSS HARTOG, TRUSTEE

_____ Borrower    _____ Seller
BORIS USTAEV
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.
MARKOWITZ,  RINGEL, TRUSTY & HARTOG, P.A ATTORNEYS AT LAW
_____ Settlement Agent            11/30/2015    Date
                                                                                          LUJARDO
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# EXHIBIT 2
Title Commitment

# ATTORNEYS' TITLE FUND SERVICES, LLC
**Miami-Dade**
**8200 NW 52nd Terrace, Suite 300**
**Miami, FL 33166**
**(800) 432-0094**
**(866) 451-8916**

Markowitz Ringel Trusty & Hartog P.A.
Two Datran Center Suite 1800, 9130 S Dadeland
Boulevard
Miami, FL 33156-7858

*Date:* October 16, 2015
*Fund File Number:* 238493

*County:* Miami-Dade
*Reference:* 15-0432B/Lujardo

*Dear Fund Member:*

*We have examined title to the property described in Schedule A attached and prepared these schedules to be used exclusively for the purpose of issuing a commitment or policy of title insurance underwritten by Old Republic National Title Insurance Company.*

*Please review the schedules before signing and inserting in a Commitment cover.  As an Agent you must:*

A.   *Add additional requirements and/or exceptions to Schedule B that you find necessary from your analysis of the present transactions.*

B.   *Evaluate Schedule A and B and issue endorsements as may be appropriate, deleting or modifying the Schedules.*

*Our examination of title reflects only those matters recorded in the Official Records Books.  You are responsible for such other off-record examinations and checks as you may find necessary pursuant to underwriting procedures. When the interest you are insuring is a personal property interest (such as a mortgage, a leasehold or cooperative interest), a federal tax lien search of the Secretary of State's records may be required. See Fund Title Note 30.02.08.*

*Where the amount of insurance is $3 million or under, a 20-year judgment and lien search was not performed on the proposed insured purchaser if a mortgage is not associated with the purchase or if the mortgage appears to be 100% purchase money in nature.*

*The Fund appreciates this opportunity to be of service.  Please contact us if you have any questions.*

*Sincerely,*

*Attorneys' Title Fund Services, LLC*
Antonio Castillo, Senior Examiner
(800) 344-6645 x7814

# OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
## COMMITMENT
### Schedule A

Fund File Number: 238493

| Effective Date: | Agent's File Reference: | Premium: |
|---|---|---|
| October 1, 2015 at 11:00 PM | 15-0432B/Lujardo | |

1.  Policy or Policies to be issued:                                      Proposed Amount of Insurance:

    **OWNER'S:  ALTA Owner's Policy (06/17/06). (With Florida Modifications)   $485,050.00**

    **Proposed Insured: David Ustaev and Boris Ustaev**

    **MORTGAGEE:**

    **Proposed Insured:**

    **MORTGAGEE:**

    **Proposed Insured:**

2.  The estate or interest in the Land described or referred to in this Commitment is

    FEE SIMPLE

3.  Title to the FEE SIMPLE estate or interest in the Land is at the Effective Date vested in:

    Alina Alvarez Alzugaray

4.  The Land referred to in this Commitment is described as follows:

    Condomininm Unit No. 603, Champlain Towers South Condominium, according to the Declaration of Condomlninm thereof, as recorded in Official Records Book 11191, Page 35, of the Public Records of Miami-Dade County, Florida.


**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
400 Second Avenue South, Minneapolis, MN 55401, (612) 371-1111

| Issuing Agent: | Agent No.:  **689901** |
|---|---|
| **Markowitz Ringel Trusty & Hartog P.A.** | |
| **Two Datran Center Suite 1800, 9130 S Dadeland Boulevard** | |
| **Miami, FL  33156-7858** | |

Agent's Signature
**Markowitz Ringel Trusty & Hartog P.A.**

Form CF6-SCH.-A (rev. 12/10) (With Florida Modifications)

# *OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY*
## *COMMITMENT*
### Schedule B-I

Fund File Number:
238493

Agent's File Reference:
15-0432B/Lujardo

I.   The following are the requirements to be complied with:

1.   Payment of the full consideration to, or for the account of, the grantors or mortgagors.

2.   Instruments creating the estate or interest to be insured which must be executed, delivered and filed for record:

   A.   Warranty Deed from Alina Alvarez Alzugaray, joined by spouse, if married, or non-homestead language, to the proposed purchaser(s).

3.   Record satisfaction of the mortgage from Alina Alvarez Alzugaray to Wells Fargo Bank, N.A. dated May 11, 2006, and recorded in O.R. Book 24535, Page 376, and Modified in O.R. Book 28861, Page 1312, Public Records of Miami-Dade County, Florida.

4.   Record satisfaction of the revolving credit mortgage in favor of Citibank, N.A. recorded November 18, 2006, in O.R. Book 25109, Page 3085, Public Records of Miami-Dade County, Florida.

5.   Prior to closing: provide lender with notice of the intended conveyance or refinance, and review the mortgage for, and comply with specific requirements pertaining to payoff information; send estoppel request to lender with written authorization by the borrower instructing the lender to immediately freeze the account, and advising lender that any amount advanced subsequent to the payoff made pursuant to such estoppel will not be secured by the property, and that upon payment the lender must execute and record a satisfaction of the mortgage; verify the amount outstanding on the day of closing; and obtain new estoppel if the outstanding amount is different from original estoppel.

6.   Obtain sworn affidavit from mortgagor(s) referencing the loan number, address of property and borrower name, the current unpaid balance of the loan (as evidenced by the attached estoppel letter), and affirming that (i) the account is closed; (ii) no advances or withdrawals of funds have been made within 30 days prior to the closing, and mortgagor will not do anything to cause any advances or withdrawals of funds to be made; and (iii) all checks, credit and/or ATM cards or other credit devices for obtaining additional equity advances or withdrawals from the credit line are being surrendered to the closing agent for Old Republic National Title Insurance Company.

7.   If the payoff is not being made by wire transfer, the package with the payoff check must include a cover letter signed by the closing agent and by the seller instructing the lender to close the account, unless closure already confirmed, and include a copy of the mortgagor affidavit.

8.   Record satisfaction of that certain Claim of Lien  dated December 23, 2014, duly recorded December 26, 2014, in O.R. Book 29444, Page 1364, Public Records of Miami-Dade County, Florida. Alternatively, record release of the lien of such Claim of Lien as to the subject property.

9.   Record dismissal of court action with prejudice and discharge of Lis Pendens recorded in O.R. Book 29216, Page 1670, Public Records of Miami-Dade County, Florida, in that certain Case No. 2014-017355-CA-01 in the Circuit Court of Miami-Dade County, Florida. For involuntary dismissal, the appeal period must expire.

10.  Satisfaction of the judgments and/or liens against Alina Alvarez Alzugaray, or a similar name, certified copies of which are recorded in the following O.R. Books and Pages: O.R. Book 29455, Page 4198 .

11.  Condominium estoppel letter must be furnished showing that the maintenance assessments are current and that there are no unpaid special assessments.

12.  Written consent of the Board of Directors of The Champlain Towers South Condominium Association, Inc., must be obtained and recorded with respect to the sale of the subject property to the proposed insured purchaser(s).

13.  Affidavit to be executed by Alina Alvarez Alzugaray stating: 1) There are no matters pending against the affiant that could give rise to a lien that would attach to the property between October 1, 2015 and the

Form CF6- Schedule B-I (rev. 12/10)

## OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
## COMMITMENT
### Schedule B-I (continued)

Fund File Number:
238493

Agent's File Reference:
15-0432B/Lujardo

recording of the interest to be insured.  2) That the affiant(s) have not and will not execute any instruments that would adversely affect the interest to be insured.

14. A search commencing with the effective date of this commitment must be performed at or shortly prior to the closing of this transaction.  If this search reveals a title defect or other objectionable matters, an endorsement will be issued requiring that this defect or objection be cleared on or before closing.

15. Note: Taxes for the year 2014 which have been paid under receipt number EEX-15-000013, on November 14, 2014, Parcel/Account ID # 14-2235-025-0280 , the gross amount being $ 4,934.24.

## OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
### COMMITMENT
### Schedule B-II

Fund File Number:
238493

Agent's File Reference:
15-0432B/Lujardo

II.  Schedule B of the Policy or Policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the Public Records or attaching subsequent to the Effective Date hereof but prior to the date the Proposed Insured acquires for value of record the estate or interest or Mortgage thereon covered by this Commitment.

2. a. General or special taxes and assessments required to be paid in the year **2015** and subsequent years.

   b. Rights or claims of parties in possession not recorded in the Public Records.

   c. Any encroachment, encumbrance, violation, variation, or adverse circumstance that would be disclosed by an inspection or an accurate and complete land survey of the Land and inspection of the Land.

   d. Easements, or claims of easements, not recorded in the Public Records.

   e. Any lien or right to a lien, for services, labor or material furnished, imposed by law and not recorded in the Public Records.

3.  Any Owner Policy issued pursuant hereto will contain under Schedule B the following exception: *Any adverse ownership claim by the State of Florida by right of sovereignty to any portion of the Lands insured hereunder, including submerged, filled and artificially exposed lands, and lands accreted to such lands.*

4.  Any lien provided by County Ordinance or by Chapter 159, F.S., in favor of any city, town, village or port authority, for unpaid service charges for services by any water systems, sewer systems or gas systems serving the land described herein; and any lien for waste fees in favor of any county or municipality.

5.  Declaration of Condominium of Champlain Towers South Condominium, and all exhibits attached thereto and recorded August 19, 1981, in O.R. Book 11191, Page 35, together with amendments thereto recorded in: O.R. Book 23310, page 1158, O.R. Book 23516, Page 4714, O.R. Book 27328, Page 767, Public Records of Miami-Dade County, Florida (hereinafter "Declaration"). Such Declaration may establish and provide without limitation for easements, liens, charges, assessments, an option to purchase, a right of first refusal, and/or the prior approval of a future purchaser or occupant.

6.  Matters as shown on the plat of Amended Plat of Normandy Beach recorded in Plat Book 16, Page 44, Public Records of Miami-Dade County, Florida.

7.  Interlocal Agreement recorded in O.R. Book 14839, Page 1192, Public Records of Miami-Dade County, Florida.

8.  Easement recorded in O.R. Book 11136, Page 1723, Public Records of Miami-Dade County, Florida.

9.  Riparian and littoral rights are not insured.

10. The rights, if any, of the public to use as a public beach or recreation area any part of the land lying or formerly lying between the body of water abutting the subject property and the natural line of vegetation, bluff, extreme high-water line or other apparent boundary lines separating the publicly used area from the upland private area, as it may have existed prior to the construction, if any, of sea wall or bulkhead thereon.

11. Any loss or damage for unpaid assessments pursuant to Sec. 718.116 (1) (a), F.S., notwithstanding any assurances to the contrary in any attached ALTA Endorsement 4.1-06 or 5.1-06.

12. Rights of the lessees under unrecorded leases.

**EXHIBIT 3**
Contract

# "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**   FloridaRealtors®

1*    **PARTIES:** _____Ross Hartog, Chapter 7 Trustee for the Estate of Alina Alvarez Lujardo_____ ("Seller"),
2*    and _____DAVID USTAEV & BORIS USTAEV_____ ("Buyer"),
3    agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4    (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase and
5    any riders and addenda ("Contract"):
6    **1. PROPERTY DESCRIPTION:**
7*       (a) Street address, city, zip: _____8777 COLLINS AVENUE,APT:603,MIAMI BEACH ,FL 33154_____
8*       (b) Property is located in: ___MIAMI-DADE___ County, Florida. Real Property Tax ID No.: ___14-22-35-025-0280___
9*       (c) Real Property: The legal description is CHAMPLAIN TOWERS SOUTH CONDOUNIT 603 UNDIV .006347% INT IN
10        COMMON ELEMENTS OFF
11       _____
12       together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached
13       wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms
14       of this Contract.
15       (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which
16       are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase:
17       range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and
18       draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access
19       devices, and storm shutters/panels ("Personal Property").
20*       Other Personal Property items included in this purchase are:_____
21       _____
22       Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*       (e) The following items are excluded from the purchase:_____
24       _____

25              **PURCHASE PRICE AND CLOSING**

26*    **2. PURCHASE PRICE** (U.S. currency):.................................................................$_____485,050.00
27*       (a) Initial deposit to be held in escrow in the amount of (**checks subject to COLLECTION**) ...............$_____1,000.00
28       The initial deposit made payable and delivered to "Escrow Agent" named below
29*       (**CHECK ONE:**) (i) ☐ accompanies offer or (ii) ☒ is to be made within ____ (if left blank,
30       then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
31       SHALL BE DEEMED SELECTED.
32*       Escrow Agent Information: Name: _____TBD BY SELLER_____
33*       Address: _____TBD_____
34*       Phone: ___TBD___ E-mail: ___TBD___ Fax: ___TBD___
35*       (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*       days after Effective Date.................................................................$_____19,000.00
37       (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*       (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8................
39*       (d) Other:...........................................................................$_____
40       (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*       transfer or other **COLLECTED** funds..................................................$_____465,050.00
42       **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**
43    **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44*       (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before ___December 31, 2016___
45*       _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46       Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
47       counter-offer is delivered.
48       (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed
49       and delivered this offer or final counter-offer ("Effective Date").
50    **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur and
51    the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on
52*    _____see section 20. C_____ ("Closing Date"), at the time established by the Closing Agent.
53    **5. EXTENSION OF CLOSING DATE:**
54       (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA) notice
55       requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to
56       exceed 7 days.

Buyer's Initials _____ _____       Page 1 of 11       Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-3  Rev.9/14 © 2014 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 000578-700144-2018965

formsimplicity

57     (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i)
58        disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance,
59        to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration
60        of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or
61        Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred
62*       within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by
63        delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and
64        Seller from all further obligations under this Contract.

65 **6. OCCUPANCY AND POSSESSION:**
66     (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
67        Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
68        personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
69        codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the
70        Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be
71        deemed to have accepted the Property in its existing condition as of time of taking occupancy.
72*     (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73        subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts
74        and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be
75        delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the
76        lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of
77        written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be
78        refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel
79        Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied
80        by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

81* **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this
82*    Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

83 **FINANCING**

84 **8. FINANCING:**
85*     ☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to
86        Buyer's obligation to close .
87*     ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA ☐ VA
88*        or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 30) days after
89*        Effective Date ("Loan Commitment Date") for (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
90*        the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing
91*        rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30) years ("Financing").

92*    Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective
93    Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment")
94    and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage
95    loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such
96    status and progress to Seller and Broker.
97
98    Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not
99    receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract up to the
100    **earlier of:**
101       (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected to
102         waive the financing contingency of this Contract; or
103       (ii.) 7 days prior to Closing Date.

104    If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms of
105    this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under
106    this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8, then this financing
107    contingency shall be deemed waived by Buyer.

108    If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the
109    Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the
110    Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3)
111    appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the
112    loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer,
113    thereby releasing Buyer and Seller from all further obligations under this Contract.

Buyer's Initials _____ _____        Page 2 of 11        Seller's Initials _____ _____

FloridaRealtors/FloridaBar-ASIS-3—Rev.9/14 © 2014 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 009578-700144-2018065

formsimplicity

114* ☐ (c) Assumption of existing mortgage (see rider for terms).
115* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

116 **CLOSING COSTS, FEES AND CHARGES**

117 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
118   (a) **COSTS TO BE PAID BY SELLER:**

119 • Documentary stamp taxes and surtax on deed, if any        • HOA/Condominium Association estoppel fees
120 • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)  • Recording and other fees needed to cure title
121 • Title search charges (if Paragraph 9(c) (iii) is checked)       • Seller's attorneys' fees
122* • Municipal lien search (if Paragraph 9(c) (i) or (iii) is checked)  • Other:_____

123   If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a
124   sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If
125   actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual
126   costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

127   (b) **COSTS TO BE PAID BY BUYER:**
128 • Taxes and recording fees on notes and mortgages        • Loan expenses
129 • Recording fees for deed and financing statements        • Appraisal fees
130 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)  • Buyer's Inspections
131 • Survey (and elevation certification, if required)       • Buyer's attorneys' fees
132 • Lender's title policy and endorsements              • All property related insurance
133 • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
134 • Municipal lien search (if Paragraph 9(c) (ii) is checked)     9 (c) (iii) is checked.)
135* Other:_____ see section 20. D _____

136* (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 5) days prior to Closing Date, a title
137   insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
138   exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
139   STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance
140   covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
141   The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall
142   be paid, as set forth below
143   **(CHECK ONE):**
144* ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for
145   closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid
146   by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
147* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
148   services related to Buyer's lender's policy, endorsements, and loan closing; or
149* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy of
150   title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which
151   is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien
152   search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if
153* applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if left blank,
154   then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

155   (d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and
156   certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall
157   be furnished to Buyer and Closing Agent within 5 days after Effective Date.

158* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
159* _____ at a cost not to exceed $_____. A home
160   warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
161   appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

162   (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
163   ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
164   ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
165   improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed
166   on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in
167   installments **(CHECK ONE):**
168* ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
169   Installments prepaid or due for the year of Closing shall be prorated.
170* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
171   IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

172   This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD)
173   pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

174   **DISCLOSURES**

175   **10. DISCLOSURES:**

176   (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient
177   quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal
178   and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon
179   testing may be obtained from your county health department.

180   (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
181   does not know of any improvements made to the Property which were made without required permits or made
182   pursuant to permits which have not been properly closed.

183   (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
184   desires additional information regarding mold, Buyer should contact an appropriate professional.

185   (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone
186   the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving
187   the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal
188   Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service
189   under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and /or flood insurance
190   rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage through the National
191   Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer may terminate this
192*  Contract by delivering written notice to Seller within _____ (if left  blank, then 20) days after Effective Date, and
193   Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this
194   Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property. The
195   National Flood Insurance Program may assess additional fees or adjust premiums for pre-Flood Insurance Rate
196   Map (pre-FIRM) non-primary structures (residential structures in which the insured or spouse does not reside for at
197   least 50% of the year) and an elevation certificate may be required for actuarial rating.

198   (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
199   required by Section 553.996, F.S.

200   (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
201   mandatory.

202   (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
203   **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY**
204   **DISCLOSURE, IF APPLICABLE.**

205   (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
206   PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
207   PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
208   IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
209   PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY
210   PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

211   (i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the
212   Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may
213   require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or
214   prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent
215   that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller
216   are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and
217   withholding requirements pursuant to FIRPTA.

218   (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not
219   readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence,
220   Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to
221   the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no
222   written or verbal notice from any governmental entity or agency as to a currently uncorrected building,
223   environmental or safety code violation.

224   **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

225   **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property,
226   including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS
227   Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___5___ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.

Buyer's Initials _____          Page 5 of 11          Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-3    Rev.9/14 © 2014 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 009578-700144-2018965

*formsimplicity*

Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**
   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
   (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.
   This Paragraph 15 shall survive Closing or termination of this Contract.
**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:
   (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).
   (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.
**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**
   **A. TITLE:**
   (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f)

formsimplicity

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for RESIDENTIAL PURPOSES. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) TITLE EXAMINATION: Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.

**G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer or Seller, and which, by: exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance

Buyer's Initials _____ ✓ _____      Page 7 of 11      Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-3    Rev.9/14 © 2014 Florida Realtors®and The Florida Bar.  All rights reserved.

Serial#: 000578-700144-2018965

formsimplicity

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H.   CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

**(i)   LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

**(ii)   CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood elevation certification, and documents required by Buyer's lender.

**(iii)   PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

Buyer's Initials __ __    Page 8 of 11    Seller's Initials __ __

FloridaRealtors/FloridaBar-ASIS-3   Rev.9/14 © 2014 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 009578-700144-2018965

*formsimplicity*

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract .

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.

(i)  No withholding is required under Section 1445 if the Seller is not a "foreign person," provided Buyer accepts proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller, signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)  If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum, if any required, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

formsimplicity

STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

525  (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288
526  and 8288-A, as filed.
527  **W.  RESERVED**
528  **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller and*
529  *against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
530  *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
531  *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
532  *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
533  *Closing.*

534  ADDENDA AND ADDITIONAL TERMS

535  **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
536* Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☒ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause |
| ☐ B. Homeowners' Assn. | ☐ N. Coastal Construction Control Line | ☐ Y. Seller's Attorney Approval |
| ☐ C. Seller Financing | ☐ O. Insulation Disclosure | ☐ Z. Buyer's Attorney Approval |
| ☐ D. Mortgage Assumption | ☒ P. Lead Based Paint Disclosure | ☐ AA. Licensee-Personal Interest in |
| ☐ E. FHA/VA Financing | (Pre-1978 Housing) | Property |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ BB. Binding Arbitration |
| ☐ G. Short Sale | ☐ R. Rezoning | ☐ Other_____ |
| ☐ H. Homeowners'/Flood Ins. | ☐ S. Lease Purchase/ Lease Option | _____ |
| ☐ I.  RESERVED | ☐ T. Pre-Closing Occupancy by Buyer | _____ |
| ☐ J. Interest-Bearing Acct. | ☐ U. Post-Closing Occupancy by Seller | _____ |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | |
| ☐ L. RESERVED | ☐ W. Back-up Contract | |

537* **20. ADDITIONAL TERMS:** A: (IN ANY CONTRACTS, RIDERS AND OR ADDENDUMS) TBD=TO BE DETERMINED
538  B:THIS AGREEMENT, RIDER(S) AND ADDENDUM(S) MAY BE EXECUTED IN COUNTERPARTS.
539  C: B:CLOSING DATE IS ON OR BEFORE 45 DAYS FROM SHORT SALE EFFECTIVE DATE (WRITTEN NOTICE TO
540  BUYER THAT ALL APPROPRIATE PARTIES HAVE APPROVED THE SHORT SALE)
541  D: BUYER TO PAY HALPRIN REALTY A $295. COMPLIANCE STORAGE  ADMINISTRATION FEE AT CLOSING.
542  F:Additional Terms: Ross Hartog, Chapter 7 Trustee for the Estate of Alina Alvarez Lujardo, will collect a Bankruptcy Estate
543  carve out in the amount of 6% of the sales price from the Short Sale Lender at closing.
544  _____
545  _____
546  _____
547  _____
548  _____
549  _____
550  _____
551  _____
552  _____
553  _____

554  **COUNTER-OFFER/REJECTION**

555* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver
556  a copy of the acceptance to Seller).
557* ☐ Seller rejects Buyer's offer.

558  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF**
559  **AN ATTORNEY PRIOR TO SIGNING.**

560  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

561  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and*
562  *conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be*
563  *negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

Buyer's Initials _____ _____      Page 10 of 11      Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-3   Rev.9/14 © 2014 Florida Realtors®and The Florida Bar.  All rights reserved.
Serial#: 009578-700144-2018965

formsimplicity

564  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE
565  COMPLETED.
566
567
568*  Buyer: _____     Date: _____ 9/12/15 _____
569
570
571
572
573*  Buyer: _____     Date: _____ 9/12/15 _____
574
575
576
577
578*  Seller: _____    Date: _9/24/15_____
579
580
581
582
583*  Seller: _____    Date: _____
584
585  Buyer's address for purposes of notice          Seller's address for purposes of notice
586*  _____       _____
587*  _____       _____
588*  _____       _____
589
590  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to
591  compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
592  disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
593  and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed
594  funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to
595  Cooperating Brokers.
596
597*  _____Ronald Kaplan_____          _____Jose Blanco_____
598  **Cooperating Sales Associate, if any**          **Listing Sales Associate**
599
600*  _____Halprin Realty_____          _____Blanco Realty Services_____
601  **Cooperating Broker, if any**          **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-3   Rev.9/14 © 2014 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 000578-700144-2018965                                                                formsimplicity

# Comprehensive Rider to the
# Residential Contract For Sale And Purchase

 FloridaRealtors

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

**If Initialed by all parties,** the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between __Ross Hartog, Chapter 7 Trustee for the Estate of Alina Alvarez Lujardo__ (SELLER) and _____DAVID USTAEV & BORIS USTAEV_____ (BUYER) concerning the Property described as 8777 COLLINS AVENUE,APT:603,MIAMI BEACH ,FL 33154

Buyer's Initials _____    Seller's Initials _____

## A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer (**CHECK ONE**): ☒ is ☐ is not required. If approval is required, this Contract is contingent upon Buyer being approved by the Association no later than _____ (if left blank, then 5) days prior to Closing. Within _____ (if left blank, then 5) days after Effective Date Seller shall initiate the approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any documents required by the Association in order to complete the transfer of the Property and each shall use diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (**CHECK ONE**): ☐ has ☐ does not have a right of first refusal ("Right"). If the Association has a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference includes all amendments thereto).
   (b) The members of the Association (**CHECK ONE**): ☐ have ☐ do not have a Right. If the members do have a Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____ (if left blank, then 5) days after Effective Date, sign and deliver any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition that Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association assessment(s) installments is/are

   $ 660.00_____ payable (**CHECK ONE**): ☒ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and if more than one Association assessment
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and the current rent on recreation areas, if any, is
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

Page 1 of 3   A. CONDOMINIUM RIDER                                    (SEE CONTINUATION)
CR-3 Rev. 9/14 © 2014 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 062051-000144-1216954

formsimplicity

**A. CONDOMINIUM RIDER (CONTINUED)**

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) Special Assessments and Prorations:

 (i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows: _____
_____

 (ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (**CHECK ONE**): ☐ Buyer ☒ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

 (iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

 (iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

 (v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

 (vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: _____
_____
_____

**4. SPRINKLER SYSTEM RETROFIT:**
If, pursuant to Sections 718.112(2)(l), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

**5. NON-DEVELOPER DISCLOSURE:**
(CHECK ONE):

☐ **(a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.**

☒ **(b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND**

Serial#: 062051-000144-1216954                                    formsimplicity

 **A. CONDOMINIUM RIDER (CONTINUED)** 

LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

6. **BUYER'S REQUEST FOR DOCUMENTS:**
   Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer **(CHECK ONE):** ☐ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

7. **BUYER'S RECEIPT OF DOCUMENTS:**
   **(COMPLETE AND CHECK ONLY IF CORRECT)** ☐ Buyer received the documents described in Paragraph 5, above, on _____.

8. **COMMON ELEMENTS; PARKING:**
   The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
   Parking Space(s) # __TBD__    Garage # _____    Other: _____

9. **INSPECTIONS AND REPAIRS:**
   The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

10. **GOVERNANCE FORM:**
    PURSUANT TO CHAPTER 718, FLORIDA STATUTES, BUYER IS ENTITLED TO RECEIVE FROM SELLER A COPY OF THE GOVERNANCE FORM IN THE FORMAT PROVIDED BY THE DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES OF THE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, SUMMARIZING THE GOVERNANCE OF THE CONDOMINIUM ASSOCIATION.

Serial#: 062051-000144-1216954

formsimplicity

# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



**If initialed by all parties,** the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between_____Ross Hartog, Chapter 7 Trustee for the Estate of Alina Alvarez Lujardo_____ (SELLER)
and_____DAVID USTAEV & BORIS USTAEV_____ (BUYER)
concerning the Property described as 8777 COLLINS AVENUE, APT:603, MIAMI BEACH , FL 33154

Buyer's Initials _____    _____    Seller's Initials _____    _____

### P. LEAD-BASED PAINT DISCLOSURE
### (Pre-1978 Housing)

#### Lead-Based Paint Warning Statement

"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that
such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead
poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities,
reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to
pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on
lead-based paint hazards from risk assessments or inspection in the seller's possession and notify the buyer of any known lead-
based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

**Seller's Disclosure (INITIAL)**

_____ (a) Presence of lead-based paint or lead-based paint hazards (**CHECK ONE BELOW**):
 ☐ Known lead-based paint or lead-based paint hazards <u>are present</u> in the housing.
 ☒ Seller has <u>no knowledge</u> of lead-based paint or lead-based paint hazards in the housing.

_____ (b) Records and reports available to the Seller (**CHECK ONE BELOW**):
 ☐ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint or
 lead-based paint hazards in the housing. List documents: _____
 _____
 ☒ Seller has no reports or records pertaining to lead-based paint or lead-based paint hazards in the
 housing.

**Buyer's Acknowledgement (INITIAL)**

_____ (c) Buyer has received copies of all information listed above.

_____ (d) Buyer has received the pamphlet *Protect Your Family* from *Lead in Your Home.*

_____ (e) Buyer has (**CHECK ONE BELOW**):
 ☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment
 or inspection for the presence of lead-based paint or lead-based paint hazards; or
 ☒ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based
 paint or lead-based paint hazards.

**Licensee's Acknowledgement (INITIAL)**

_____ (f) Licensee has informed the Seller of the Seller's obligations under 42 U.S.C.4852(d) and is aware of
 Licensee's responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information
they have provided is true and accurate.

| | | | |
|---|---|---|---|
| SELLER | 9/24/11 Date | BUYER | 9/12/15 Date |
| SELLER | Date | BUYER Boris Ustaev | 9/12/15 Date |
| Listing Licensee | Date | Ronald Kalman Selling Licensee | September 11, 2015 Date |

Any person or persons who knowingly violate the provisions of the Residential Lead-Based Paint Hazard Reduction Act of
1992 may be subject to civil and criminal penalties and potential triple damages in a private civil lawsuit.

**Page 1 of 1   P. LEAD-BASED PAINT DISCLOSURE**
CR-3 Rev. 9/14 © 2014 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 032460-000144-1204521

*formsimplicity*

## Addendum to Contract for Residential Sale and Purchase



1   If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2* between _____ Ross Hartog, Chapter 7 Trustee for the Estate of Alina Alvarez Lujardo _____ ("**Seller**")
3* and _____ DAVID USTAEV & BORIS USTAEV _____ ("**Buyer**")
4* concerning the Property described as 8777 COLLINS AVENUE, APT:603, MIAMI BEACH, FL 33154 _____
5* _____
6 _____ (____) (____) **AA. Short Sale Approval:** This Contract is contingent upon **Seller** obtaining
7 "Short Sale Approval" from **Seller's** lender(s) and all other lien holders (collectively "**Lender**"). Short Sale Approval
8 means Lender (i) approves the terms of this Contract and the settlement statement; (ii) agrees to a reduced payoff
9 and to provide satisfaction(s) and/or releases of the mortgage(s) and any other lien(s) encumbering the
10 Property ("**Mortgage(s)**"); and (iii) agrees to release **Seller** from any claim(s) for a deficiency under the Mortgage(s)
11 and note(s) secured by the Mortgage(s). **Seller** must deliver a copy of the Short Sale Approval to **Buyer** within 7 days
12* after receipt but no later than _____ days (45 days if left blank) after Effective Date (*Approval Deadline*).

13 If Lender makes an offer to **Seller** that does not include items (i) through (iii) above or contains additional terms or
14 obligations affecting **Seller**, **Seller** may, but is not required to, accept the offer. If **Seller** accepts the offer, it will be
15 deemed Short Sale Approval, and **Seller** will deliver a copy to **Buyer** as provided above.

16*   **1.**   **(Check if applicable)** ☐ Seller's Lender has set the list price and approved this Property for short sale.

17   **2.**   **Short Sale Application; Buyer Cooperation:** Seller will make application for short sale with Lender within
18* _____ days (10 days if left blank) after Effective Date (Short Sale Application Date), unless Seller has already
19 done so; and Buyer will cooperate with Lender in all reasonable respects to effectuate the short sale.

20   **3.**   **Time Periods:** All time periods set forth in this Contract will begin on the day after Seller delivers Short Sale
21 Approval to Buyer, except time periods for Approval Deadline, Short Sale Application Date, Contract
22* Termination Date, and the following items, if checked, will begin as set forth in this Contract: ☒ Initial Deposit
23* ☐ any inspection provided for in this Contract that **Buyer** deems necessary ☐ other (specify):
24* _____
25* _____

26   **4.**   **Offers; Back-up Contracts:** If required by Lender, Seller may receive additional offers and submit such offers
27* to Lender, even if such offers are not accepted by Seller. **(Check one)** Seller ☒ may ☐ may not enter into back-
28 up contracts. (If neither box is checked, Seller may enter into back-up contracts.)

29*   **5.**   **Closing Date; Termination:** Seller and Buyer agree to extend the Closing Date in this Contract __30__ days
30 (15 days if left blank) if Lender requires additional time to complete the short sale. If **Seller** does not deliver a
31 copy of the Short Sale Approval by Approval Deadline, either party may thereafter terminate this Contract by
32 delivering written notice to the other; and **Buyer's** deposit(s) will be refunded. If (i) **Seller** has not delivered a
33* copy of the Short Sale Approval to **Buyer** within __1000__ days (90 days if left blank) after Effective Date
34 (Contract Termination Date); or (ii) Lender fails to complete the short sale; or (iii) the Property is sold at a
35 foreclosure sale before Closing, this Contract will terminate; and **Buyer's** deposit(s) will be refunded.

36   **6.**   **Buyer Acknowledgement:** Buyer acknowledges that (i) Lender is not a party to this Contract and is
37 not obligated to approve this Contract; (ii) **Buyer** is responsible for understanding Lender's policies and
38 procedures; (iii) Lender may impose restrictions on **Buyer's** ability to resell the Property; and (iv) **Seller** and
39 Broker are not liable for delays caused by Lender, failure of Lender to approve or complete the short sale, or any
40 costs (such as payments for loan applications, inspections, and appraisals) associated with this short sale.

41   **7.**   **Seller Acknowledgment:** Seller acknowledges that (i) a short sale may be a taxable event to Seller, and
42 **Seller's** credit may be negatively impacted; (ii) **Seller** has been advised to consult with appropriate legal and tax
43 professionals and to rely on such professionals and not Broker for legal and tax advice; and (iii) **Seller**
44 releases Broker and its associates from all liability regarding the consequences of a short sale.

©2013 Florida Association of REALTORS®

Serial#: 059594-800144-1216566

formsimplicity

# Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

 FloridaRealtors®

If Initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between_____ALINA ALVAREZ ALZUGARAY_____ (SELLER) and_____DAVID USTAEV & BORIS USTAEV_____ (BUYER) concerning the Property described as 8777 COLLINS AVENUE,APT;603,MIAMI BEACH ,FL 33154

Buyer's Initials ☑DU   ☑BU.          Seller's Initials ☒_____

### W. BACK-UP CONTRACT

This back-up contract is subject to the termination of a prior executed contract between Seller and a third party for the sale of the Property. If the prior executed contract is terminated and Seller delivers written notice of the termination to Buyer before 5:00 p.m. on ____Sep 15, 2017____, this contingency shall be removed and this back-up contract shall move into first position. The "Effective Date" of this back-up contract shall be the date Seller delivers written notice of the termination of the prior executed contract. Buyer may terminate this back-up Contract by delivering written notice to the Seller prior to the date Seller delivers written notice of the termination of the prior executed Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

CR-3 Rev. 9/14 © 2014 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 098090-800144-1081827

formsimplicity

Addendum to "As-Is Residential Contract for Sale and Purchase" (the "Contract")

1.    Bankruptcy Court Approval. This Contract is not binding on the Seller until it is approved by the Bankruptcy Court in the Southern District of Florida.  A denial by the Bankruptcy Court of the sale of the real property shall not constitute a default of this Contract which would entitle any party to damages or specific performance of the Contract.

2.    Closing Agent. Notwithstanding any provision contained in the Contract stating to the contrary, the Closing Agent shall be designated by the Seller.

3.    Dispute Resolution. Any disputes, claims or controversies between the parties arising out of or relating to this Contract or a breach thereof will be resolved by the Bankruptcy Court in the Southern District of Florida, which retains jurisdiction to resolve any dispute.

4.    Seller Default. Buyer agrees that in the event the Seller is unable or unwilling to perform Seller's obligations under this Contract, the Buyer shall accept a return of the Buyer's Deposit as agreed upon liquidated damages in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, and that the Seller, Ross Hartog, as Bankruptcy Trustee for the Estate of Alina Alvarez Lujardo, and the Bankruptcy Estate of Alina Alvarez Lujardo, shall not be liable for any further damages or subject to any action for specific performance of this Contract.

5.    Occupancy. This property may be tenant-occupied.  The Seller shall take all reasonable steps to ensure the tenant has vacated the property on or before the closing date. Notwithstanding section 6 or any other provision of this Contract, a failure of the tenant to vacate the property despite reasonable efforts by the Seller to deliver a vacant property to Buyer shall not be deemed a default of this Contract by Seller. Should the tenant fail to timely vacate the property despite reasonable efforts by the Seller, the Buyer agrees (I) to either (a) extend the closing date until such time as the Seller is able to obtain a court order and evict the tenant, provided that such date shall not be greater than sixty (60) days after the closing date specified in the Contract; or (b) continue with the purchase of the property subject to occupancy by the tenant; and (2) that the Seller shall not be held liable for any damages caused by a delay of the tenant to vacate the property.  In the event that the Seller is unable to evict the tenant and deliver a vacant property to the Buyer within sixty (60) days after the closing date (or such time as agreed upon by all parties), the Buyer reserves the right to cancel the Contract and receive a refund of any deposit.

Buyer

Seller